This video is a work of fiction. Any resemblance to actual people, events, or events is purely coincidental. If the pleadings were not amended, and if there were no other allegations or assertions or claims for damages that were at issue and addressed by the board, then it seems to me that the only basis for your petition to cancel is now gone. That was this court's reasoning, Your Honor, I believe, in the Cardinal Chemical Company v. Morton International holding involving a patent that the defendant had filed. Well, it's a different issue with infringement and validity in the patent context, because here you could clearly have had any number of independent bases to petition to cancel, and you were not limited to even filing what would be a counterclaim. You could have filed an independent petition to cancel on any number of grounds, but you chose, at least from this pleading, to petition to cancel on the grounds of damage by virtue of the opposition. Well, Your Honor, I think as you said earlier, there was not a concise articulation of the damage as a ground. Well, it's true, but that may affect the standing issue with respect to the entire petition, but I think that we can concede, at least for purposes of discussion, that there was at least some allegation of damage to support the challenge to those registrations as being the basis for the opposition. The mere assertion of the registration against the party, the mere assertion of intellectual property right against the party, I think, brings with it the supposition that there's damage. I won't disagree with you on that. And, Your Honor, I don't think there's a difference, a material difference. There's certainly a distinction, but I don't think it's material in the patent context, where the defendant may be locked into only pursuing a declaratory judgment, and in the trademark context that you have the option, you have alternative procedural mechanisms for challenging a registration. The holdings in Cardinal Kim, in this court's holding, in the Fort James Court v. Solo Cup decision, don't draw that as a distinction. What the court, the Supreme Court, in the Cardinal Kim holding, in this court, in the Fort James Corporation holding, said is that the assertion of an intellectual property right creates sufficient apprehension about how that right will be used going forward, and the voluntary actions or the involuntary actions of the intellectual property owner to get rid of the case, involuntary where the court finds there's non-infringement, or the voluntary action that you have in Fort James Court, where the patent owner lost on infringement, and before the jury could come back on the holding of invalidity, signed a covenant not to sue, and expressly waived the right to appeal. The court said, once you assert, this court said, once you assert that intellectual property right, the defendant has a right to have the validity of that tested, even if, in the case of the Fort James Court, the owner promises never to assert it again. As the court, I think, correctly held, the assertion of intellectual property right by itself brings the validity into question, and once it's brought into question, the defendant has a right to have that result, regardless of what circumstances the unsuccessful intellectual property right owner takes to diffuse that determination. So you're saying once the opposition is lodged, that in effect brings into play any ground for damages that you might at any time assert, regardless of whether it's pled or not. I think you could articulate it in that fashion. Once the intellectual property right has been placed into contention, the defendant has a right to have the validity of that right determined, regardless of the action of the court forward, he throws out the claims of infringement, and certainly regardless of the actions of the intellectual property owner. Assuming, again, that you're correct, and I'm not sure I agree with you, but assuming you're correct and that other grounds of damage beyond the pleading might come into play just by the filing of the opposition, the fact of the matter is the board's ruling was only on the opposition. The board's ruling didn't go beyond that. The board's ruling should have gone beyond that, and that's why we're here today, if I understand how you phrase it. But the board's ruling has not been appealed, so that ruling on the opposition is resolved. I'm not sure if I understand the court's question on that point. The board ruled on the trademark owner's claim. It ruled against the trademark owner, as in the case of Fort James Court, and my client first held the defendant wants a determination of the validity of that intellectual property right that was asserted against him. Your Honor, I see that my answer is correct. Why don't you? I think since we've questioned you extensively, I think we can extend the time to allow some further discussion of the merits. These are both difficult issues, and so I think it would be helpful to us if you would spend some time on the merits. Thank you, Your Honor. And we'll give Mr. DeRosa an equal amount of time. Thank you, Your Honor. One of the concluding thoughts on the merits, on the standing issue, I think the willingness of the courts to opine on the validity of intellectual property rights and the urging of the lower courts to do so is only underscored in the Supreme Court's January 7th holding in MetaMU, which holds for the first time that a patent licensee who is not in breach of the patent license can assert the intellectual property right because of the chilling effect the validity of the patent had and the compulsory nature of the monopoly rights on the patent. It's entirely consistent with the holdings in Cardinals and Fort James. And Judge Bryson, thank you for the additional time. Turning to the Pioneer factors about whether the court ought or whether the board ought to have excluded the evidence of my client, the first factor that the Supreme Court articulated in Pioneer was the prejudice to the party. There is no telling that the board made no findings on any of the factors, didn't even address them, acknowledge that they were there, that weighing the factors, we find that there's not excusable neglect. Prejudice of the other party. What was excluded was the testimony of the opposer's executive officer, the very testimony that the opposer had introduced into evidence four years before the TTAB decided that First Help could not rely upon it at trial. And we introduced it at trial to test or on the very same points for which the opposer, Care First of Maryland, had introduced the same testimony in September or August of 2001. Mr. Wolf's testimony? Yes, Your Honor. Now, with respect to that, it's really an abuse of discretion type of a standard review for us, isn't it? It is an abuse of discretion. Where is the abuse of discretion on the part of the board in not allowing that testimony in? I mean, the abuse of discretion standard is a pretty hard hurdle to overcome. Your Honor, that evidence was before the board. It had been before the board since 2001. This was not an issue of filing for the first time or a surprise on Care First. It had been argued at summary judgment by the parties. And before the opening of the trial testimony period, First Help expressed to Care First of Maryland the desire to testify, to take a trial testimony of this executive officer to which counsel for Care First responded, we would prefer if you would simply use the discovery deposition, file that, First Help complied. It was anticipated. It had been argued. It had been judged on at summary judgment. It was anticipated by the parties that it would be introduced at trial. There was no prejudice whatsoever at Care First. In fact, at the oral arguments, when Care First stood before the board, the board asked, are the evidentiary rulings dispositive in this case, to which Care First said no. The parties continued their arguments with no elaboration of the evidentiary motions. Care First filed its trial briefs arguing the points about the significance of Mr. Woolf's testimony and what legal conclusions should be drawn from that. In fact, Care First even cited the evidence. The abuse of discretion, Your Honor, if the court goes through the pioneer factors, they all fall decidedly in favor of First Help. Well, let me ask you this question as a matter of administrative law, really. It is true, as you correctly point out, that the board referenced the Supreme Court's decision in Pioneer as its starting point for its analysis. But I suppose there wouldn't be anything wrong with the board saying that we're going to insist on strict adherence to our timing rules, and therefore we won't have an excuseable neglect standard. We'll just say if you miss the time, you miss the time you're out. Certainly there wouldn't be anything wrong with that as a matter of their administrative discretion to run their own ship, right? I think it would, Your Honor. A district court certainly would not be allowed to. No, but a district court is in a different position because they are, within the federal system, supervised directly by the Supreme Court and subject to the Supreme Court's procedural rules and the federal rules of civil procedure. But where I'm going with this, obviously, is the question is true that the board has borrowed, so to speak, Pioneer for its own rules, but is it entitled to enforce Pioneer perhaps in a more rigorous way than would be done in a district court? So that something that we would consider an abuse of discretion if it came out of the district court would not necessarily be an abuse of discretion if committed by the board. I don't think so, Your Honor. I think once a tribunal says it's going to adhere to a particular legal standard, it's that legal standard. And I think that the legal standard for the administrative agency is, for these types of decisions, is abuse of discretion. Is it arbitrary and capricious? There are certain, I think, due process considerations if somebody before an administrative tribunal is treated in an arbitrary and capricious manner. And this ruling here, we think, rises to the level of being arbitrary. There was no articulation of the reason given. The evidence had been in file for years. It was a case dispositive ruling for a case that went on as going on for six years. This isn't ancillary evidence. As the board noticed, well, as the board itself noted, we look at this counterclaim, we look at your evidence, we've said we exclude that evidence, end of story. That was the analysis. After six years of litigation, for evidence that the opposer had introduced, that everybody knew that was going to be argued, that had been on file for years, Your Honor, that's an abuse of discretion, it's arbitrary, it's capricious. I think First Office should have this argument served. On the third factor, the third pioneer factor, I'm sorry, the second factor, the length of the delay and its potential impact on judicial proceedings, I note here that your motion to reopen the period was filed in February of 2004. The decision of the board was not until September of 2005. Am I correct that the TTAB's procedures are such that they sort of reserve all of the rulings on motions until decision time? Because it seems to me that, I mean, had the board in September 2005 ruled in your favor and permitted reliance on those pieces of evidence, it most assuredly would have had to reopen the testimony period for opposing party to at least respond. And at that late date, certainly that would have delayed proceedings, complicated proceedings, as compared to a ruling that had come a week after you filed your motion, for example. Well, that's an interesting way of looking at it, Your Honor, that a board can justify its actions by creating its own delay. The board delayed 18 months of ruling upon this and said, well, we've already waited 18 months, now if we admit it, we delay it even further. And is that the normal practice? They just sit on the motions until decision time? Your Honor, as Mr. DeRosa and Careforce of Maryland shows well in their briefs, there were a number of motions pending at that time which the board did rule upon to include, as Mr. DeRosa referenced in his response brief. No, but I'm not referring to this. I'm just saying as a general practice, does the board rule on motions as they are presented, or does the board wait until the end of the proceedings and rule on all of the motions at once, which they seem to do here? In this case, it's been my experience that there's no general practice. Evidentiary rules of evidence objections, typically rules of evidence under the hearsay rules, not procedural rules, they'll typically wait until the trial briefing is done. Evidentiary discovery schedule, I mean scheduling issues, they usually rule upon at the time. They did in this case with the exception of this particular motion, which it appears they took it as a purely evidentiary motion when in fact it was a procedural motion. But Your Honor, your argument also, or your statement also presupposes that they would have had to reopen the hearing or reopen the testimony period. Careforce had already responded to those arguments in its trial brief and treated them as admitted. They were on file at the time. I understand. All right, thank you. Very well. Why don't we restore your rebuttal time, and we'll hear from Mr. DeRosa now. So you will have rebuttal time, even though we've run over. Can you add, Mr. Schwarzwald, can you add five minutes to Mr. DeRosa's time in order to equal that up? Good morning, Your Honor. Good morning. May it please the court, there are three points we'd like to make in this case. The first point is that this appeal should be dismissed for lack of jurisdiction. Once we withdrew our appeal of the findings of the board, any injury in fact suffered by the appellant disappeared. Were the pleadings amended at any time to aver any other damage other than the opposition? No, Your Honor. The pleadings were amended three times, to the best of my recollection, to accommodate the changes with the dilution statute. And then after the motion for summary judgment, we amended it again, and that's the references you will make on page 256. And those were the pleadings that framed the trial. Is your argument that the issue is moot for the NALAC standing to bring the case? No. They had standing. Under board practice, if we oppose and the other side is automatically given standing to file the counterclaim. Well, you didn't object to their standing at that point, so you waived it. I'm sorry, Your Honor. You waived standing arguments at that point. At that point, that's the board procedure. But what's key here, Your Honor, is that standing between the board is different for Article III jurisdiction. The power of this court to act relies on case or controversy, not whether they're standing before the board. Congress can provide standing for administrative resolution of any issue and define an injury, but it is still the case or controversy requirement that enables this court to act. Congress cannot displace Article III. There's an Eighth Circuit decision that discusses this in Wilcox, I believe. I have to go to the site. Why isn't the difference in the context or the procedural posture of an infringement action in district court versus a cancellation proceeding before the board enough to make a difference and create a risk of injury downstream for first help? If I understand... This is the argument that's being made to us, and the argument is that the district court action would not necessarily simply be a copy of the opposer's action. It would have different features in it. As such, there is a continuing risk that the opposer's unsuccessful action here would not necessarily protect the mark owner from the assertion of care for its mark in an infringement action. That's the argument that's being made. You're familiar with it. I'm familiar with the argument. Why is it not a valid basis on which to assert the possibility of injury? If I understand Your Honor's question, you're basically getting to what's the res judicato collateral estoppel effect of the board's decision on the purpose and whether or not that constitutes an injury to the parties. And on this basis, if we were to go to the federal district court, I think there's a very strong likelihood that care first would be barred by collateral estoppel for relitigating those issues against the first house. There's a big difference between the right to register and the right to use. Proceedings before the board are restricted to questions of right to register and not to use. So wouldn't there be different issues involved in any district court proceeding? There could be different issues, but the way the district courts now are applying the TTAB decisions, they ask whether or not the TTAB decision is considered marketplace realities and in the context of likelihood of diversion or dilution. And in this 74-page decision, there was a lot of evidence about the marketplace, the way the parties were using the marks in the marketplace, other third parties using the mark. And so care first would have to climb Mount Everest to relitigate the issues of likelihood of diffusion or dilution. But you could, though. You have that right. But more likely, the district court would find registry of account. This was a recent case in L'Oreal. Well, let me just give you an example, and this is drawn from the materials. I think First Health, according to assertion in the appendix, don't know if it's true or not, but it's asserted, First Health uses the expression, a health plan that cares for people first. Yes, sir. Now, are you saying that care first could not, in light of the board's decision, could not assert infringement against that kind of slogan? That's an entirely different action, an entirely different mark. Well, but they're much better off if they have your mark canceled in that action, right? We still have common law rights. A cancellation of our registration does not affect our common law rights. Well, you have common law rights, but you'd rather go in armed with a registration, wouldn't you? Certainly. Okay, so they're better off. If you were to bring an action against the use of that slogan, they'd be better off if you didn't have a registered mark, right? We are afforded some procedural benefits, but it still goes to the same core issue, whether or not there's a likelihood of confusion between that slogan and our mark at common law and unfair competition as well. Right. But I'm hard-pressed to say that they wouldn't have a reason, a sufficient reason to want to improve their procedural posture with respect to an issue like that to create a case of controversy, or at least a controversy. I can understand that, but this is where Munsinger comes in, Your Honor. They have a right to come in and to move to have the, once we would do our appeal, they have a right to come in and move to have the board's decision on the kind of thing as vacated. I think Munsinger had a bad day back in 1993 when Bancorp was decided, frankly. I'm sorry. I wouldn't rely too much on Munsinger. I think Bancorp has knocked most of the legs out from under Munsinger. Bonermont. Bonermont, yeah. Right. The Supreme Court there said that stripping everything from Munsinger, the motion for vacature should have been brought. If it stands for anything, that's what it should stand for. But there's no obligation on the part of the court to grant such a motion. The court isn't required to grant such a motion, or presumably would the board be. I believe if there's an elimination of Article III jurisdiction, then I believe the court is obligated to. Well, all right. I don't want to launch into a discussion of Bonermont, but I question whether the fact that one has the right to go back and ask for a vacater, particularly in administrative order, means that the entire proceeding is thereby rendered moot because you had that capacity. It's moot for vacater to have the board dismiss their findings on the issue of— And if the board denies it? Then they have a right to go to the Supreme Court. Or they have the right here to come to this court, you'd say. I'm sorry. This court denied it. No. You'd go back to the board. You wouldn't go to this court with that kind of motion because you'd go to the tribunal that entered the order, right? You would go to this court, Your Honor, with a motion for vacater to request a remand to have it dismissed by the TTAB. Right, but we wouldn't be the ones that would grant the order dismissing. That's correct, Your Honor. All we could do is send it back, and then the board would have a decision as to whether they wanted to grant the motion or not. That's correct. They wouldn't have an obligation to do so, presumably. I believe they would if the instructions were to vacate because of— Well, I mean, yeah. All right. Well, let's move on. The second point that we would like to make, Your Honor, is that if there is an abuse of discretion— Oh, let me back up, Your Honor. If there is jurisdiction, the board did not abuse its discretion. The board considered the four factors of pioneer and ruled that they weighed in favor of care first. This evidence was submitted three and a half weeks after the close of the testimony period. The appellant knew that the testimony period ended January 31, 2004, and they submitted this evidence three and a half weeks later. The board has every right to control its documents. When you say they knew, I take it what you mean by that is they were on notice. Appellant had filed an earlier motion saying that the testimony period ended January 31. We wouldn't take the deposition or testimony of a third party outside the testimony period. But you're not contesting that this was— I mean, you're not suggesting that this was willful disregard as opposed to a negligent oversight, right? You're not suggesting— When you say they knew, that sort of suggests to me that you're saying that, well, they knew, they focused on it, they adverted to the January 31 deadline, they said, to heck with it, we'll just file two weeks late and they're going to have to live with it. That wasn't—nothing in the record supports that. Your Honor, I can't go into the mind of the appellant and what motivated them. All I know is that they did file an earlier motion to extend the testimony period in order to take the testimony of a third party. Okay. So they knew and they stated January 31 was the close of the testimony period. We were quite surprised when we received the motion three and a half weeks later to introduce this evidence. Well, Mr. Biller said that that testimony was already part of the record. That, if I recall correctly, was part of the motion for summary judgment. Mr. Wolfe's testimony was part of the motion for summary judgment.  The board has a policy or rule that says that it will disregard anything that's submitted in the context of the motion for summary judgment will not be considered at trial. You still have to proceed to reintroduce that evidence. But if it's part of the record, though, you were aware and were on notice, at least, as to what that testimony was. Oh, absolutely. So you're not prejudiced by that? We were prejudiced in the sense that we did not have a rebuttal period. We lost 30 days. Had they granted that motion, we would have, you know, we lost the rebuttal period. Well, we don't know whether you would or would not have had a rebuttal period. The board could have extended your rebuttal period. The board could have extended, that's correct. So that's not a basis to contend that there's any prejudice, because we don't know that necessarily. That's true, yeah. I think you would have had an appeal if you had. Oh, absolutely. I bet you would have been up here in about a half hour from that in a second. Looking at the first of the factors, the pioneer factors, then I think that factor fairly supports the applicant in this case. If you look at the fourth factor, whether the move enacted in good faith, it's nothing to suggest that this was done in bad faith or that there was anything inappropriate. So I think here again, that factor probably tips in favor of the other side. This becomes very close to the facts of Pumpkin. We had a similar situation with the first and the fourth factor tipping one way and the other two factors tipping decidedly the other way, and they were the deciding factors. If I understand correctly, the board treats the third factor, whether or not it was within the movement's control, as really the critical factor in deciding. And they repeatedly have said, I think when they first applauded Pioneer and the Pumpkin decision, they said that a docketing issue is solely within the control of the party. The board's decision on page 19 of its opinion says, taking into account all of the relevant circumstances surrounding applicants' delay, we find that on balance, the factors weigh in favor of opposer rather than applicant. Do you read that meaning that they found that all of the factors weigh in favor of opposer? Because it seems that if that's the case, that's contrary to the way I would look at it. Your Honor, they considered the factors. They did not point out which factor they were hanging their hat on here. But they did say also in those passages, to my recollection, that the third factor, whether or not it was within the control, was the determining factor. But would it be up to us to reweigh those factors in lieu of the board? I do not believe so, Your Honor. I believe the abuse of discretion standard, as you mentioned before, is a very tight standard. And there's been no error of law or the application of law. If the board did not even mention Pioneer or did not even mention that it considered the factors, then there probably would be error. But they did mention it. It was a proceeding that has been pending for five years. They looked at all the briefs on this issue, and they found that the factors weigh in. But as Judge Bryson pointed out, they wouldn't even have to consider Pioneer, would they? There's no obligation to consider Pioneer. They just adopted Pioneer standards. There's no obligation. And they weighed those as pretty well written up in the TPAB opinion. There's no obligation. They've chosen to follow them as guidelines. But they can still rely on their own control, their own docket. Well, to try to fine-tune that a little bit, once they say we accept Pioneer, should our task be, then, to review what the board does in the same way we would review a similar decision by a district court directly applying the Supreme Court's dictates in Pioneer? This is the same question I asked your opposing counsel. With the adjunct that it's still administrative trial people, and that they still have their own rules and regulations that control their ability to conduct their affairs. I think that answer means no. A qualified no? A qualified no, okay. The third factor, or the third point we'd like to point out, Your Honor, is that if the board did abuse its discretion, then, at the very most, this case should be remanded back to the board for proceedings on the issues. Appellant's asking for this court to decide the issue on the merits. And, again, there's no full record here. We've not submitted our vote evidence in the context of the account claims. And, so, at the very minimum, there is an abuse of discretion issued and remanded for further proceedings. A question, going back to the mootness issue that puzzles me about this, and it may turn on the law of collateral estoppel more than anything else. But, I'm wondering whether, I'm a little puzzled, in a way, by the positions that the two parties have taken on the mootness issue. I'm not sure it's necessary, in your client's interest, to be pressing the mootness argument. Because, if this case is moot, it seems to me that cuts against giving collateral estoppel effect to a favorable board decision in later proceedings, if it should arise, because the other side has been deprived of their opportunity to test the board's decision in an appellate forum. In the context of... In the context of incontestable registration, abandonment can be raised at any time. So, there is, in fact, an issue. Now, certainly we would argue that, if we ever were to sue First Health over this issue again, that, you know, they're barred by res judicata or collateral estoppel. Well, but wouldn't that argument be a lot weaker if you prevail on your mootness argument? Because then they would be able to come in and say, no, no, you don't apply collateral estoppel if we've been deprived of our opportunity for appellate review of the board's decision. Obviously, if you were to get a favorable decision on the merits from this court on that issue, then you're fully armed with collateral estoppel. But not, it seems to me, if it's moot. You could stand months from now getting whatever it stands for. Yeah, I'm not, I wouldn't put a lot of weight on much of it. Okay. Boner, Maul. The motion should have been made for Bakershire to preclude any res judicata effect a decision would have against First Health. That's the remedy. That's the option that they had to take here. Yeah, would it benefit us to have a ruling that these registrations are valid? Sure, it would. But, you know, we believe these registrations are valid anyway. All right. The other argument, or statement I would like to make, is that, and a question to Judge Lynn, posed, the board takes the policy of when you go to trial, you make your objections, and you introduce the evidence in the alternative in the event the board overturns the objections. But how about motions on reliance and things of that sort? They wait until the end. They wait until the end. Yes. So it seems to me that any sort of delay in the proceedings is sort of self-inflicted. One could look at it that way, Your Honor, but at the same token, it puts the burden on us to argue in the alternative, and that's what I was trying to point out. Yes, we did introduce the rule of testimony in the alternative, in the event the board lets this evidence in, the evidence does not support the claims made by the appellant. So all of this was put in the brief, in the trial brief, in the alternative, in the event this evidence, the board decided to let this evidence in. So the board did have this evidence before. I see my time is up here. Very well. Thank you, Mr. DeRosa. Mr. Biller, you have rebuttal time. Thank you, Your Honor. Your Honor, this case certainly falls somewhere between the Supreme Court, as far as the threat of Care First of Maryland's trademark registration rights. Our position, First Health of Maryland, First Health's position falls somewhere between where the defendant in the Supreme Court's hearing of Cardinal Chemical Company in 1993 and the Supreme Court's decision this January 7th in Metamune. We certainly have more threat of harm in the history of an antagonistic relationship than the defendant in Metamune. And again, in that recent decision by the Supreme Court, it again is emphasizing, as I think practically the public policy is, more and more in our economy depends on intellectual property and free flow of information. Once an intellectual property owner starts chilling the use of intellectual property, those against whom the intellectual property right has been asserted have a right to have that validity tested and determined. And, Your Honor, Judge Bryson, you said, well, perhaps it turns on collateral estoppel. This Court said in Fort James Court, the holding of Fort James Court by this Court would undercut that. In Fort James Court, you had better than collateral estoppel. You had a sworn promise not to sue by the defeated plaintiff. Plus a statement not to appeal. Plus a statement not to appeal. Why wouldn't the collateral estoppel argument be a valid one here? Why would it? Why would it not be? It's not for two reasons that the judges have touched upon, Your Honor. One, that this registration right goes beyond the trademark at issue, First Carolina Care. Any trademark, as Judge Bryson mentioned earlier. What about this tagline, which you've already proven to be antagonistic about, and which my colleague was candid about? That's fair game. That's a new proceeding. That registration would be a much more valuable use against it. And two, regardless of what's right. Could you raise at that point the issue of collateral estoppel? Could we raise the issue of collateral? Not for other trademarks. Not at all, Your Honor. If they went after the First Carolina Care mark, particularly in the age of the Internet, where jurisdictional boundaries are more overlapping than perhaps it was 20 years ago, we still have to make and raise judicata arguments. And the circuits come down in different areas on that. The TTAB's examination of a trademark is different than a district court's examination. The TTAB, as this court knows, examines all potential uses of the mark. The district court will confine its analysis to the commercial realities. And the circuits have split about whether it's absolutely raised judicata or it needs to be taken under court by court. But it was pointed out the TTAB looks to the registration, registrability of the mark, and not to the infringement of the mark as such. As the district court will be looking at it. That's correct, Your Honor. But we would still be confronted by the registration, whether it was for the First Carolina mark, the mark that was issued in this proceeding, or another of the families of marks, such as the tagline referenced by Judge Bryson and threatened in the proceeding by Care First of Maryland. But what would prevent you at that point to renew your cancellation motion? We would think nothing would, Your Honor, except that we're here today after six years of litigation. I would like that question to be resolved today instead of after another six years of litigation and a subsequent proceeding. I think those cases that I touched on earlier stand for that. If you put that issue against a party, that party has a right to have the validity of that tested and not wait to see if it arises again. Do you think that is a – the assertion of injury – I think what you're saying, and correct me if this is not a fair characterization, isn't a necessary element in the procedural posture that we have here for a counterclaim of cancellation once you have an opposition proceeding? I think the fact of injury is inherent. The Supreme Court has taken a view once that intellectual property right has been asserted. So you don't have any obligation to make any specific factual allegation of injury, as you would in a different setting, if this were a freestanding claim? I would hate to make an absolute statement that there's no – The damage is there by the assertion. By the assertion of? By the assertion of the intellectual property. Right. Other than that. Other than that, because as Judge Lind was pointing out, there isn't much, if anything, in the counterclaim itself that is an independent claim of injury, particularly setting aside the opposition proceeding. That's a fair point. Your time has expired. Actually, I think, yeah, I think that's right. Thank you both, counsel. The case is submitted.